UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JANET DIANE SHIPLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 1:10-cv-1311-DML-TWP |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

# Decision on Judicial Review

Plaintiff Janet Diane Shipley seeks judicial review, under 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration that she was not disabled as of December 31, 2008, the date she was last insured for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[1]

Mrs. Shipley applied for DIB on March 24, 2005, and after a hearing in February 2008, an administrative law judge acting for the Commissioner decided she was not disabled. On January 30, 2009, the National Appeals Council issued its order vacating the ALJ's decision, remanding the case for the ALJ to adequately evaluate a medical opinion of Mrs. Shipley's pain management doctor, and instructing the ALJ to gather additional evidence "concerning the claimant's fibromyalgia and depression," including consultative examinations if warranted. In relevant part, the National Appeals Council ordered the ALJ to:

> Obtain additional evidence concerning the claimant's fibromyalgia and
> depression in order to complete the administrative record in accordance with the

---

[1] The parties consented to the magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

> regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513). The additional evidence may include, if warranted and available, consultative rheumatology and psychiatric examinations and medical source statements about what the claimant can still do despite the impairment.

(R. at 38-39).

On remand and after a hearing, the ALJ again found that Mrs. Shipley was not disabled at any time before her last-insured status date. Mrs. Shipley contends that the ALJ's decision must be vacated and remanded because he did not develop the record sufficiently to conclude that her mental impairments were not severe and did not limit her work abilities. She argues that the ALJ's failure to order a consultative psychological examination rendered his evaluation of her emotional impairments without rational basis. The court agrees. The Commissioner's decision is reversed and remanded for proceedings consistent with this decision.

## Standard for Proving Disability

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be of such severity that she cannot perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis about whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled. The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and

functional capacity. 20 C.F.R. § 416.960(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## The ALJ's Findings

At step one, the ALJ determined that Mrs. Shipley did not engage in substantial gainful activity between her amended alleged onset of disability on October 12, 2003, and her date last insured of December 31, 2008. (R. 17). At step two, the ALJ identified Mrs. Shipley's "fibromyalgia and associated depression" as a severe impairment that more than minimally limited her ability to perform basic work activities, but also stated that "the depression associated with the claimant's fibromyalgia is not severe." (*Id.*). At step three, he found that no listing had been met or medically equaled. The ALJ evaluated Mrs. Shipley's fibromyalgia symptoms against listing 14.09 for inflammatory arthritis and 14.06 for undifferentiated and mixed connective tissue disease, and her depression against the general "B" criteria for mental health listings and the "C" criteria for affective disorders under listing 12.04. (A claimant whose mental impairment does not manifest itself at a severity level tested by the B criteria may then look to the C criteria for a particular listing.) To satisfy the B criteria, a claimant's mental disorder must result in at least two of the following:

Marked[2] restriction of activities of daily living; or

Marked difficulties in maintaining social functioning; or

Marked difficulties in maintaining concentration, persistence, or pace; or

Repeated episodes of decompensation, each of extended duration.

---

[2]   "Marked" means "more than moderate but less than extreme." Listing 12.00C (Assessment of level of severity). The regulation explains that a "marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

4

The ALJ decided that Mrs. Shipley was only mildly limited in the first three areas, and had had no episodes of decompensation of extended duration. He also found that her medical history did not meet the C criteria for affective disorders requiring, among other things, a documented history of the disorder of at least two years' duration, currently attenuated by medication or psychological support, and significant difficulty in coping as described in 12.04C. (R. 18-19).

The ALJ then assessed Mrs. Shipley's residual functional capacity, an assessment that also required the ALJ to analyze Mrs. Shipley's mental impairments (even if not severe) and determine whether they impose any functional limitations. The ALJ ultimately determined that Mrs. Shipley could perform a range of light work. His RFC did not include any functional limitations based on mental impairments. At step four, the ALJ found that as of Mrs. Shipley's December 31, 2008 last insured status date, she could perform her past work as a medical secretary and therefore was not disabled. (R. 25).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The ALJ must ensure that he has adequate medical evidence on which to base his decision, and if there is insufficient documentation available from the claimant's treating providers, must order consultative physical or psychological examinations. *See* 20 C.F.R. § 404.1512. If an ALJ concludes that benefits should be denied, he must have first built an accurate, logical bridge between the evidence and his conclusion. *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008).

## Analysis

Mrs. Shipley seeks reversal of the ALJ's decision and remand for further proceedings on the ground that the ALJ committed legal error by failing to order a consultative psychological examination. She asserts that without the results of such an examination, the record was incomplete and the ALJ could not rationally determine the severity of Mrs. Shipley's emotional impairments or whether and how they limit her functional ability to work.

I.   **The ALJ must ensure the record is adequate for decision-making**.

The ALJ is responsible for ensuring the record is sufficiently complete for deciding disability. *Kendrick v. Shalala,* 998 F.2d 455, 456 (7th Cir. 1993) (ALJ has duty to develop a complete record). As the Seventh Circuit noted in *Kendrick,* reasonable minds can differ on "how much is enough," so the judiciary "accept[s] reasonable assessments by administrative officials about how much evidence is enough." *Id.* at 457. *See also Poyck v. Astrue,* 414 Fed. Appx. 859, 861 (7th Cir. 2011) ("The court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures (including additional consultative examinations) are needed in order to accomplish that goal.")

In *Kendrick,* the ALJ had ordered the claimant to undergo consultative examinations by five different medical specialists covering the range of physical and mental conditions that the claimant had urged—on a successive basis—rendered him disabled. The claimant was seen by a doctor for general medical and eye problems, by a chiropractor and two psychologists, and by a neurologist. *Kendrick* is generally viewed as the "enough is enough" case, but does not shed much light for determining when the record is not good enough. In *Poyck,* the Seventh Circuit described several circumstances that render the record incomplete and warrant a consultative examination: when the evidence is ambiguous, when specialized medical evidence is required

6

but missing from the record, or when a claimant's medical condition has changed but the record lacks a recent medical evaluation necessary to understand the severity of the condition. 414 Fed. Appx. at 861-62.

Other courts have made similar observations. In *Ford v. Secretary of Health and Human Servs.,* 659 F.2d 66 (5th Cir. 1981), the claimant testified at the administrative hearing that her primary impairment was "nervousness," but mental health records were sparse and she asked for a psychiatric evaluation. The ALJ found that her mental health problems were not severe, but he did not order a psychiatric evaluation or state why he found one unnecessary. The Fifth Circuit reversed. It found that the medical evidence demonstrated that the claimant did suffer from mental health issues and the ALJ too lightly brushed over that evidence but without even addressing the claimant's request for a consultative psychological exam. Under those circumstances, an exam "was necessary to enable the [ALJ] . . . to make an informed decision." 659 F.2d at 68-69. In both *Goodman v. Astrue,* 618 F. Supp. 2d 1069 (W.D. Mo. 2009), and *Lightford v. Barnhart,* 2006 WL 3857490 (E.D. Pa. Dec. 27, 2006), the medical examiner testifying at the administrative hearing opined that the medical evidence was unclear or in a "grey zone" and that additional testing through a consultative examination would assist the examiner in understanding the extent of the claimant's impairments. The district courts reversed the administrative decisions denying benefits so that additional medical evidence could be gathered for making an informed decision. *Goodman,* 618 F. Supp.2d at 1072; *Lightford,* 2006 WL 3857490 at *5. *See also Falcon v. Apfel,* 88 F. Supp. 2d. 87, 91 (W.D.N.Y. 2000) ("ALJ must normally order a consultative examination when a 'conflict, inconsistency, ambiguity, or insufficiency in the evidence must be resolved.'")

7

## II. Mrs. Shipley repeatedly asked the ALJ to order a consultative mental examination.

In both September 2005 and December 2005, Mrs. Shipley's counsel made written requests for a consultative psychological examination to help document Mrs. Shipley's emotional problems and their severity, stating that although Mrs. Shipley has not been treated directly for depression, her depression "is a very real problem for her." (R. 75, R. 80). Again in February 2008, before the first administrative hearing, Mrs. Shipley stated that a consultative psychological examination would be appropriate because she does not see a mental health counselor but her depression is consistently noted by the doctor treating her fibromyalgia. (R. 41). When, after the first hearing, the National Appeals Council vacated the ALJ's decision of non-disability, it directed the ALJ to obtain additional evidence concerning Mrs. Shipley's fibromyalgia and depression "in order to complete the administrative record," including "if warranted," consultative rheumatology and psychiatric examinations. (R. 39). The ALJ ordered a physical examination that was conducted by a general practitioner (R. 321-32), but not a psychological one. Her counsel again asked—before the second hearing—for a consultative psychological examination, stating that Mrs. Shipley's disability stems from both fibromyalgia and depression. (R. 26-27).

At the second hearing, Dr. Mark Farber, a general practitioner, testified at the ALJ's request. (R. 36). Dr. Farber acknowledged that he is not an expert in psychiatry or psychology, but agreed that persons suffering from fibromyalgia commonly suffer from depression and the depression needs to be addressed, along with other symptoms. (R. 414-15). He also noted the amount of narcotic medicine that Mrs. Shipley has been prescribed and takes, finding it an "enormous" and "tremendous" amount (R. 410, 412) that could affect her ability to work because of the effect on her memory, coordination, and "many things." Dr. Farber testified that testing—

a host of "neurocognitive and neuropsychological tests"—could measure the effect on Mrs. Shipley's ability to work. (R. 410-11).

At the conclusion of the hearing, the ALJ stated his view that the "records that I have in front of me" do not support finding a severe mental condition. (R. 422). Mrs. Shipley's counsel reiterated the request for a psychological evaluation, particularly in light of Dr. Farber's testimony. (R. 422). The ALJ stated he would take it under advisement, but noted that he "rarely grants those requests," and was skeptical because if one was really needed, the request would have been made before the hearing. (R.423). When told that the claimant had requested a psychiatric consultation before the hearing (and indeed had made three prior requests), the ALJ said that he had complied with the Appeals Council's instructions, and "I could care less if I'm appealed . . . I don't care . . . It means nothing to me." (*Id.*).

The ALJ did not order a psychological consultative examination. Nothing explains why he chose not to do so either before the second administrative hearing, although his comment at the hearing suggests he was not aware of the request, or after—although his comment suggests a personal policy against ordering consultative exams.

### III.     The ALJ erred in failing to order a consultative examination.

The record evidence shows a lengthy medical history, back to 2000, of mental health issues. The records reflect, back to 2000, discussions by Mrs. Shipley of her depressive symptoms with health care providers, her family doctor's prescribing of five different brands of antidepressants over time, a nurse's recommendation that she seek mental health counseling, and her expressed reluctance to obtain counseling because it had not helped her before. Mrs. Shipley met with a neuropsychologist one time in October 2001 who reported that she would benefit from therapy but that "due to her psychological profile she is likely to resist such a treatment

9

procedure." The record contains no other evaluation by a psychiatrist or psychologist and no comprehensive psychological examination, despite her counsel's repeated requests for a consultative examination dating back to 2005. The medical examiner's hearing testimony also highlighted deficiencies in the medical record that could be filled through testing and would be helpful to understanding Mrs. Shipley's ability to work. Dr. Farber was surprised at the "tremendous" amount of pain medication Mrs. Shipley has been prescribed and ingests every day, agreed that the medication likely affected her concentration and memory, and noted that neuropsychologist tests could measure the effect of the medicine on her work abilities. Indeed, Mrs. Shipley had been fired from the medical secretary job she had held for 16 years because she was not doing her job correctly anymore, or as well as she had previously (R. 344-46), which may be suggestive of deteriorating mental abilities.

The Commissioner does not directly respond to Mrs. Shipley's very strong showing that the record before the ALJ was not sufficiently complete to allow for informed decision making regarding her mental impairments. And it is difficult to defend the ALJ's decision making when, by ironic twist, he pointed to the lack of a "formal psychological evaluation in the record" in his analysis of the severity (or lack of severity, to be precise) of Mrs. Shipley's depression (R. 18), yet refused to fill the gap with a psychological consult.

The Commissioner's argument in support of the ALJ's finding that Mrs. Shipley was not disabled is that it would be futile for Mrs. Shipley to undergo a consultative examination now because she must establish her disability before the last insured date of December 15, 2008, and an examination at this point cannot shed light on her past condition. Whether a retrospective diagnosis is possible under the circumstances is a medical question. *See Estok v. Apfel,* 152 F.3d 636, 640 (7th Cir. 1998) ("restrospective diagnosis may be considered if it is supported by

10

factual evidence"); *Flaten v. Secretary of Health & Human Servs.,* 44 F.3d 1453, 1461 n.5 (9th Cir. 1995) (cited in *Estok*) ("Retrospective diagnoses by treating physicians and medical experts, contemporaneous medical records, and testimony from family, friends, and neighbors are all relevant to the determination of a continuously existing disability with onset prior to expiration of insured status"). A medical expert should determine whether she can make a retrospective diagnosis based on information made available to her, including through a current consultation and examination of Mrs. Shipley.

Further, if an opinion regarding Mrs. Shipley's mental health before December 15, 2008, cannot possibly be gleaned based on current testing and evaluation and all the other pertinent evidence, it seems hardly appropriate to lay at Mrs. Shipley's door the lack of medical evidence when she has repeatedly asked for the consultative evaluation yet her requests—and the suggestion of the Appeals Council—have been ignored.

The Commissioner does not contend that the record before the ALJ was complete and does not defend the ALJ's failure to order a psychological examination before the second administrative hearing. It is the lack of sufficient psychological evaluation that rendered the record insufficient to allow an informed judgment whether Mrs. Shipley was disabled. Without a complete record, the ALJ did not have a rational basis for deciding that Mrs. Shipley's mental impairments were not severe, for deciding that her mental impairments did not affect her work abilities, or for deciding that she could have still performed her prior work—a job from which she was fired apparently because of the deterioration of her mental abilities.

**Conclusion**

The court is persuaded that the record before the ALJ was insufficient for the ALJ to make an informed judgment whether Mrs. Shipley was disabled on or before December 31, 2008. The court REVERSES the Commissioner's decision and REMANDS for further proceedings as provided by 42 U.S.C. § 405(g). On remand, Mrs. Shipley is entitled to a psychological consultative examination which should include the neuropsychological tests described by Dr. Mark Farber in his testimony.

So ORDERED.

Date: 03/12/2012

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Timothy J. Vrana
tim@timvrana.com